UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| HENRY SHIRLEY, )<br>)<br>*Plaintiff* )<br>)<br>v. )<br>)<br>OFFICER RABERSTEIN, OFFICER )<br>BAKER, JOHN PERKINS, MICHAEL )<br>ANTONELLI, AND WILLIAM WOGAN, )<br>)<br>*Defendants* ) | Cause No. 1:19-cv-4111-RLM-MJD |

ORDER

Henry Shirley, representing himself, has sued members of the Indianapolis Metropolitan Police Department—Sergeant John Perkins and Officers Lee Rabensteine, Michael Antonelli, Christopher Baker, and William Wogan—claiming that they violated his Fourth Amendment right against unreasonable seizures by using excessive force when they arrested him. The defendants have moved for summary judgment. The record before the court discloses no genuine issue of material fact, and the defendants have shown that on these facts, they are entitled to judgment as a matter of law. The court grants summary judgment to the defendants.

I. BACKGROUND

Consistent with the procedures that govern summary judgment rulings, the following facts are drawn from a view of the summary judgment record as generous as reasonably possible to Mr. Shirley (as the motion's opponent), with

all factual disputes resolved, and all reasonable inferences drawn, in his favor. The court is hampered in that effort by the absence of much factual content in Mr. Shirley's summary judgment response and the lack of any designation of evidence in support of that response.

Mr. Shirley's encounter with the defendant IMPD officers took place on January 25, 2019. Four days before that, an IMPD detective had advised all IMPD officers that Mr. Shirley was suspected of a violent attempted home invasion robbery with shots fired from the day before, and that Mr. Shirley had an active arrest warrant for possession of a firearm by a serious violent felon.

On January 25, an IMPD officer pulls Mr. Shirley over for a traffic stop and approaches the car. Mr. Shirley speeds off. The officer chases him, lights and sirens engaged, as Mr. Shirley drives through several residential yards. Mr. Shirley finally stops and enters a house that he doesn't own or live in. A handgun falls from the car as he gets out. A woman and her children are evacuated from inside the house.

IMPD dispatch notifies the defendants of the chase and the defendants go to the house that Mr. Shirley entered. Mr. Shirley has barricaded himself in the attic. The attic's floor is comprised of spaced apart wooden beams laying horizontally across the house. Drywall is installed on the underside of the beams, which constitutes the ceiling of the main floor directly beneath the attic. Loose insulation is between the beams. Mr. Shirley is hiding between two beams and has covered himself with insulation. Drywall bears the weight of his body.

Negotiators call Mr. Shirley's cell phone, but the calls went straight to voicemail. Police use a P.A. system to announce the presence of a SWAT team and order Mr. Shirley several times to come out with his hands up. Mr. Shirley doesn't appear. After several minutes of announcements, SWAT officers deploy flashbangs outside the front and back of the house. No Mr. Shirley. SWAT officers deploy tear gas into the house a few minutes later. Still no Mr. Shirley. About ten to twenty minutes after the gas was deployed—and some two hours after Mr. Shirley was first ordered to come out—SWAT officers enter the house. Sergeant Perkins is among the officers who entered the house, but he leaves quickly after the first floor is cleared.

Mr. Shirley hears the officers enter, but he says nothing. The officers order Mr. Shirley to come out from the attic; he doesn't comply. Officers deploy tear gas into the attic; Mr. Shirley doesn't come out and stays quiet.[1] Officer Baker is wearing SWAT hearing protection that amplifies noise that would allow him to hear any attempted communications from Mr. Shirley.

At this point, the drywall on which Mr. Shirley was laying cracks near the lower part of his body. The officers below hear the crack and watch as the ceiling slowly begins to drop. A large piece of drywall finally gives way and falls, exposing Mr. Shirley's leg. Officers order Mr. Shirley to come down (more than a dozen times); Mr. Shirley doesn't come down. In Mr. Shirley's recollection, he extends his wrists to signal that he was surrendering because the opening is too small

---

[1] Officer Rabensteine later attested that he had been exposed to tear gas during training, that it's extremely unpleasant, and that it takes a very dedicated person to withstand it.

for him to come down from the attic. Mr. Shirley remembers saying, "I give up"; but Officers Rabensteine, Baker, Wogan, and Antonnelli remember silence.

Officer Rabensteine fires a beanbag round that hits Mr. Shirley in the leg. Mr. Shirley retreats up into the attic, repositioning himself across the wooden beams so as not to fall through the drywall. Officer Rabensteine orders Mr. Shirley (multiple times) to come down, but Mr. Shirley doesn't comply, so Officer Rabensteine fires another beanbag round at Mr. Shirley's left hip. Mr. Shirley falls from the attic on to the floor of the room beneath.

Mr. Shirley is rolling from side-to-side on his back, punching, kicking, and screaming.[2] The officers fear that Mr. Shirley might have another weapon but can't get control of Mr. Shirley to put handcuffs on him. Rather than comply with commands to stop resisting and to put his hands behind his back, Mr. Shirley rolls over and tries to stand up.

Officer Baker yells "taser, taser, taser" but Mr. Shirley doesn't surrender, so Officer Baker deploys his taser. Mr. Shirley still doesn't surrender. He grabs towards his waistband as if trying to pull the taser prongs out of his clothing. Officer Baker yells "taser, taser, taser" and deploys his taser again; still Mr. Shirley doesn't surrender. Officer Wogan orders Mr. Shirley to stop resisting and kicks Mr. Shirley's right thigh, [3] but Mr. Shirley doesn't surrender. Officer Wogan

---

[2] Officer Rabensteine compared Mr. Shirley's behavior to a toddler that doesn't want to have his pants put on.

[3] IMPD officers are trained to target the common peroneal nerve, located on the outside of the upper leg, to temporarily disable the leg. Kicking the common peroneal nerve causes temporary loss of motor control of the leg.

4

kicks Mr. Shirley twice more in the same spot while ordering Mr. Shirley to stop resisting. Mr. Shirley still doesn't surrender.

Officer Antonelli yells "taser, taser, taser," and deploys his taser when Mr. Shirley doesn't surrender. When that taser strike doesn't subdue Mr. Shirley, Officer Antonelli tries to tase him again. Mr. Shirley moves to stand up just as Officer Antonelli deploys his taser, and the probe hits Mr. Shirley in the cheek, rendering Mr. Shirley unconscious. The officers finally handcuff him.

Officers Wogan and Rabensteine carry Mr. Shirley outside where a doctor immediately treats him. Mr. Shirley regains consciousness in the ambulance. Mr. Shirley is arrested for two counts of possession of a handgun by a serious violent felon based on the outstanding arrest warrant, and for felony resisting law enforcement.

Mr. Shirley filed this suit under 42 U.S.C. § 1983 against defendants for violation of his Fourth Amendment right against unreasonable seizures because he says that the defendants used excessive force when they arrested him. He seeks $10,000,000 in compensatory damages and $20,000,000 in punitive damages. The defendants have moved for summary judgment.

II. STANDARD OF REVIEW

"Summary judgment . . . is proper only if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [the movant] is entitled to judgment as a matter of law." Protective Life Ins. Co. v. Hansen, 632 F.3d 388, 391-392 (7th Cir. 2011); Fed. R. Civ. P.

5

56(a). The court's function at the summary judgment stage isn't "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In making that determination, the court must construe the evidence, and all inferences that can reasonably be drawn from the evidence, in the light most favorable to the non-moving party. Id. at 249, 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions . . . ."). The movant bears the burden of showing that there is no genuine issue of material fact, but the non-moving party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Id. at 256.

      To defeat a summary judgment motion, "the nonmovant must present definite, competent evidence in rebuttal," Parent v. Home Depot U.S.A., Inc., 694 F.3d 919, 922 (7th Cir. 2012), and "must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial[,]" Hemsworth v. Quotesmith.com, Inc., 476 F.3d 487, 490 (7th Cir. 2007) *see also* Fed. R. Civ. P. 56(e)(2). Summary judgment is "not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." Hammel v. Eau Galle Cheese Factory, 407 F.3d 852, 859 (7th Cir. 2005).

III. Discussion

The Fourth Amendment of the U.S. Constitution protects the people against "unreasonable seizures." U.S. Const. Amend IV. That means that, in the context of an arrest, the Fourth Amendment protects people from the use of excessive force by the police. Gupta v. Melloh, 19 F.4th 990, 995-996 (7th Cir. 2021). "An officer's use of force is unreasonable if, judging from the totality of the circumstances at the time of the arrest, the officer uses greater force than was reasonably necessary to effectuate the arrest." Phillips v. Cmty. Ins. Corp., 678 F.3d 513, 519 (7th Cir. 2012). "[T]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham v. Connor, 490 U.S. 386, 396 (1989) (internal citations omitted). "A court must evaluate whether the officer's actions were objectively reasonable in light of the facts and circumstances confronting that officer," Gupta v. Melloh, 19 F.4th at 996 (citing Graham v. Connor, 490 U.S.at 396), and acknowledge "the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation[,]" Graham v. Connor, 490 U.S.at 396.

The defendants say that they are entitled to qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). It protects "all but the plainly incompetent or those who knowingly violate the law . . . . If officers of reasonable competence could disagree on the issue [of whether or not an action was constitutional], immunity should be recognized." Malley v. Briggs, 475 U.S. 335, 341 (1986).

"Once the defense of qualified immunity is raised, 'it becomes the plaintiff's burden to defeat it.'" Id. (citing Wheeler v. Lawson, 539 F.3d 629, 639 (7th Cir. 2008)). "To overcome a defendant's invocation of qualified immunity, a plaintiff must show: '(1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct.'" Green v. Newport, 868 F.3d 629, 633 (7th Cir. 2017) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011)). The court has discretion "to decide which element of the qualified immunity defense to address first. If the answer to either question is no, the defendant official is entitled to qualified immunity." Muhammad v. Pearson, 900 F.3d 898, 904-905 (7th Cir. 2018).

Mr. Shirley alleges that the officers used unreasonable force in arresting him when they kicked, tased, and shot him with beanbag rounds while he was falling through the ceiling and after he was on the ground. He can only prevail against those defendants whom he can show were personally involved in using

8

unreasonable force. Colbert v. City of Chicago, 851 F.3d 649, 657 (7th Cir. 2017); Wolf-Lillie v. Sonquist, 699 F.2d 864, 869 (7th Cir. 1983) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault. An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation . . . . A causal connection, or an affirmative link, between the misconduct complained of and the official sued is necessary.").

### Sergeant Perkins

An officer may be personally involved if "he fail[s] to take reasonable steps to attempt to stop the use of excessive force used by his fellow officers . . . ." Sanchez v. City of Chicago, 700 F.3d 919, 926 (7th Cir. 2012). But a failure-to-intervene theory of § 1983 liability requires a showing that the officer knew of another officer's use of excessive force and had the "ability to stop the wrongdoing . . . ." Id. at 928 ("Officer A's failure to intervene in the wrongdoing of Officer B, despite A's knowledge of and ability to stop the wrongdoing, is a form of personal involvement in B's misconduct.").

The defendants submit evidence that Sergeant Perkins left the house before Mr. Shirley fell through the ceiling. Perkins Aff. ¶ 15-17. Mr. Shirley doesn't cite anything to controvert this evidence, so the court considers that fact undisputed. *See, e.g.*, Packman v. Chicago Trib. Co., 267 F.3d 628, 646 (7th Cir. 2001). If excessive force was applied to Mr. Shirley while he was falling from the ceiling and after he was on the ground, it couldn't have come from Sergeant

Perkins because he was outside at that time. And Sergeant Perkins can't be liable under a failure-to-intervene theory because, being outside the house, he wouldn't have had knowledge of what force was being used to effect Mr. Shirley's arrest.

Sergeant Perkins is entitled to summary judgment.

### Officer Rabensteine

"It is well established that a police officer may not continue to use force against a suspect who is subdued and complying with the officer's orders. But that principle depends critically on the fact that the suspect is indeed subdued." Johnson v. Scott, 576 F.3d 658, 660 (7th Cir. 2009) (internal citations omitted). Officers are not expected to take an apparent surrender at face value when a suspect "ha[s] used every method at his disposal to flee from the police" and only stops fleeing when he has no more available options of escape. Id.

After Officer Rabensteine fired the first beanbag round at Mr. Shirley's thigh, Mr. Shirley testified that he showed his hands from the attic and said, "I give up." [Shirley Dep. 39:12-21; 41:7-9]. He then said he retracted his hands and grabbed the wooden beams to save himself from falling. [Shirley Dep. 40:24-25; 41:1-6]. Officer Rabensteine attested that he never heard Mr. Shirley say anything, and that Mr. Shirley's hands were visible for only a second or two, making it impossible to handcuff Mr. Shirley. Officer Rabensteine then fired another beanbag round at Mr. Shirley's hip, and that's when Mr. Shirley fell from the ceiling.

Mr. Shirley had used every option of escape available to him up until he finally fell. His apparent surrender didn't establish that Mr. Shirley was unarmed and not otherwise a threat to officers. And his behavior leading up to that point indicated that Mr. Shirley was uncooperative and unpredictable. "[T]he right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion . . . to effect it." Graham v. Connor, 490 U.S. at 396. The facts that Mr. Shirley was wanted for a violent attempted home invasion robbery, that a gun had dropped from the car that Mr. Shirley fled from, and that he had done everything in his power to evade arrest warrant the use of some force to effect his arrest. *See* id. A reasonable officer could think that the use of the beanbag rounds was necessary to help control Mr. Shirley. Mr. Shirley hasn't established that Officer Rabensteine violated his statutory or constitutional rights, as he's required to do to survive summary judgment once the defense of qualified immunity is raised. So Officer Rabensteine is entitled to summary judgment.

### Officers Baker, Wogan, and Antonnelli

Mr. Shirley alleges in his amended complaint that he was knocked unconscious when he fell headfirst from the attic and hit the floor. Officers Rabensteine, Baker, Wogan, and Antonnelli describe his behavior as actively resistant and potentially dangerous. These conflicting narratives would usually constitute a fact in dispute.

But "[t]oday's Federal Rules . . . [require] a 'party asserting that a fact cannot be or is genuinely disputed' to support that position by citing 'particular

11

parts of materials in the record' or, conversely, 'showing that the materials cited do not establish the absence or presence of genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.'" Hinterberger v. City of Indianapolis, 966 F.3d 523, 527 (7th Cir. 2020) (citing Fed. R. Civ. P. 56(c)); *cf.* S.D. Ind. L.R. 56–1(e). Officers Rabensteine, Baker, Wogan, and Antonnelli cite their affidavits to support their versions of the events, while Mr. Shirley doesn't cite any evidence at all. His brief makes no citation to the record, and he didn't file a designation of evidence in support of his response brief.

"[S]ummary judgment may only be defeated by pointing to admissible evidence in the summary judgment record that creates a genuine issue of material fact, and it [isn't] the district court's job to sift through the record and make [the non-movant's] case for him." United States v. 5443 Suffield Terrace, Skokie, Ill., 607 F.3d 504, 510 (7th Cir. 2010); *cf.* S.D. Ind. L.R. 56–1(h).

Attorneys and self-represented parties shouldn't expect judges to search the record for fact issues like pigs searching for truffles, (United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991), but Rule 56(e)(3) authorizes a summary judgment court to do just that, and there is a truffle to be found by rooting around in this record. While Mr. Shirley didn't designate any evidence for consideration on the summary judgment motion, the defendants submitted the plaintiff's deposition. [Doc. No. 65, ex. 5]. Mr. Shirley testified in that deposition that he landed on his head when he plunged out of the ceiling, and he was unconscious as the defendants kicked and tased him. [Shirley Dep. 44:22-23;

45:8-10; 55:6-8]. That testimony, if properly placed before the court, would create a factual dispute about the need for the force the police used.

A summary judgment court's discretion to consider evidentiary material not cited to the court is relatively new, having come into being with the 2010 amendments to the federal rules. This issue isn't commonly seen in federal litigation, and our court of appeals hasn't yet had occasion to identify the factors that should guide a court deciding whether to exercise that discretion. The Advisory Committee Note to the 2010 amendment to Rule 56(e)(4) suggest that a court might want to exercise this new power in cases involving pro se litigants: "Many courts take extra care with pro se litigants, advising them of the need to respond and the risk of losing by summary judgment if an adequate response is not filed. And the court may seek to reassure itself by some examination of the record before granting summary judgment against a pro se litigant."

Pre-amendment guidance from the Supreme Court differed; courts weren't to relax the rules at the summary judgment stage even for a self-represented litigant:

> It is no doubt true that there are cases in which a litigant proceeding without counsel may make a fatal procedural error, but the risk that a lawyer will be unable to understand the exhaustion requirement is virtually nonexistent. Our rules of procedure are based on the assumption that litigation is normally conducted by lawyers. While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed, and have held that some procedural rules must give way because of the unique circumstance of incarceration, we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel. As we have noted before, in the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.

McNeil v. United States, 508 U.S. 106, 113 (1993) (citations and quotations omitted). The 2010 amendment provided the authority the Supreme Court withheld, but McNeil remains as a powerful policy statement.

Since 2010, the court of appeals has continued to affirm district courts that didn't go beyond the evidentiary material properly before them. *See, e.g.*, Huon v. Mudge, 597 Fed, Appx. 868, 870 (7th Cir. 2015). District courts have occasionally tried to accommodate pro se litigants. *See, e.g.*, Grothian v. Dalrymple, 2018 WL 1124441, at *2 (N.D. Ind. Feb. 26, 2018).

So at this point in the law's development, the court, having found the deposition testimony in which Mr. Shirley testified he was unconscious after the ceiling gave, has discretion to give Mr. Shirley and the defendants a chance to properly support or address the fact, Fed. R. Civ. P. 56(e)(1), or to consider the evidence of Mr. Shirley's efforts to resist restraint after his fall to be undisputed, Fed. R. Civ P. 56(e)(2), ignore the deposition testimony and grant summary judgment to the defendants for all the reasons discussed in this opinion so far, Fed. R. Civ P. 56(e)(3), or enter some other "appropriate order[,]" Fed. R. Civ P. 56(e)(4).

That Mr. Shirley is representing himself favors the first approach—reopening the summary judgment record for more briefing. The Advisory Committee noted the pro se litigant as a factor to be considered in this situation. But four others factors lead the court to decide the summary judgment motion without reference to his deposition testimony. First, the Supreme Court's cautionary language already quoted from McNeil v. United States, 508 U.S. at

113, somewhat tempers the weight of Mr. Shirley's pro se status. Second, while Mr. Shirley's work is plainly not that of an attorney, his performance in his self-representation has exceeded what courts usually see from pro se litigants. He has articulated his positions well. Third, Mr. Shirley's summary judgment response demonstrates that he knew of his obligation to present and identify what he wanted the court to consider when deciding the summary judgment motion.[4] The absence of an evidentiary submission by Mr. Shirley can't be attributed to a pro se litigant's unawareness of the summary judgment procedures.

And fourth and finally, this isn't an instance of a litigant omitting a record citation to support a factual assertion. Notwithstanding his deposition testimony and the allegations of the second amended complaint, Mr. Shirley's summary judgment response contains no factual assertion that he lost consciousness when he hit the floor. Re-opening the briefing—or taking any other fair alternative the court can conceive—would change the facts on which Mr. Shirley has chosen to rely. The court would be allowing a litigant to provide a record citation for a fact the litigant no longer appears to assert.

For all of these reasons, the court, while cognizant that the summary judgment record contains a potential genuine issue of material fact to which

---

[4] "The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. . . . In addition, the non-movant is obligated to file with the court a 'Statement of Genuine Issues' supported by appropriate citation to the record outlining all material facts to which the non-movant contends exist that must be litigated. . . . The non-moving party must come forward with specific facts showing that there is a genuine issue for trial." [Doc. 72, at 7-8].

15

neither side cited, and cognizant that the court has discretion to consider (or not to consider) that uncited evidence in deciding this summary judgment motion, declines to consider the deposition testimony not cited in the parties' submissions.

"If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion . . . [or] grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it. . . . ." Fed. R. Civ. P. 56(e)(3); *cf.* Packman v. Chicago Trib. Co., 267 F.3d 628, 646 (7th Cir. 2001) ("[Non-movant plaintiff] introduced no evidence, other than her own conclusory assertions . . . . Thus, she failed to establish a genuine issue of fact . . . ."). The court takes the defendants' version of the events as an undisputed fact because Mr. Shirley hasn't cited any evidence to support his side of the story.

Mr. Shirley did everything in his power to evade arrest up until he fell from the attic. Even when he was on the ground with nowhere to escape, he kicked and punched at officers. He reached for their belts—where officers carry their weapons. He was rolling side-to-side, making the defendants concerned that he was concealing a weapon, "his actions suggested an intent to use violence to fend off further police action." United States v. Norris, 640 F.3d 295, 303 (7th Cir. 2011).

While "[f]orce is reasonable only when exercised in proportion to the threat posed," and force "becomes increasingly severe the more often it is used[,]" Cyrus

16

v. Town of Mukwonago, 624 F.3d 856, 863 (7th Cir. 2010), it is often justified when "[a] suspect poses a threat of serious physical harm to [officers] or to others[,]" Ford v. Childers, 855 F.2d 1271, 1274 (7th Cir. 1988).

"[S]ummary judgment is often inappropriate in excessive-force cases because the evidence surrounding the officer's use of force is often susceptible of different interpretations." Catlin v. City of Wheaton, 574 F.3d 361, 367 (7th Cir. 2009). But this isn't such a case. Mr. Shirley just wouldn't surrender. He was also wanted in connection with a violent crime, had led police on a car chase that put everyone involved at danger, and a gun had dropped from the car he fled from. The force Mr. Shirley deems unreasonable was insufficient until the last taser strike. Reasonableness is measured considering the totality of the circumstances, Phillips v. Cmty. Ins. Corp., 678 F.3d at 519, recognizing that officers are forced to make split-second decisions in circumstances that are tense, uncertain, and rapidly evolving, Graham v. Connor, 490 U.S. at 396. Under these circumstances, Officers Baker, Wogan, and Antonnelli used a reasonable amount of force to effectuate Mr. Shirley's arrest, so they are entitled to summary judgment.

IV. CONCLUSION

For the forgoing reasons, the court GRANTS the defendants' motion for summary judgment. [Doc. No. 64].

SO ORDERED.

ENTERED: March 31, 2022

/s/ Robert L. Miller, Jr.

17

                                      Judge, United States District Court

Distribution:

HENRY SHIRLEY
720042
BRANCHVILLE - CF
BRANCHVILLE CORRECTIONAL FACILITY
Electronic Service Participant – Court Only


Mathew Rayman
OFFICE OF CORPORATION COUNSEL
mathew.rayman2@indy.gov